David E. Hurwitz and Others, Appellants, *v.* Rebecca Hurwitz, Respondent.

Second Department, April 9, 1926.

Ejectment — action by stepchildren to remove stepmother from premises owned by father of plaintiffs at time of death — defendant pleads marriage settlement in Jewish language executed according to laws of Moses and Israel — motion by plaintiffs for judgment on pleadings properly denied — answer raises issues — validity of agreement cannot be determined on motion — agreement signed by agents of parties is valid — Statute of Frauds not applicable.

In an action in ejectment, brought by the stepchildren of the defendant, to remove the defendant from premises owned by the father of the plaintiffs at the time of his death, the plaintiffs are not entitled to a judgment on the pleadings, consisting of the complaint, the amended answer and a bill of particulars, since it appears that the defendant interposed as a defense, in connection with denials of certain allegations of the complaint, that the defendant and the plaintiffs' father, prior to their marriage, entered into an agreement, written in the Jewish language, called a " Koshuba; " that the agreement was executed in accordance with the Jewish laws of Moses and Israel, which, together with the agreement, were set forth in the defendant's amended answer; that said agreement entitled the defendant to a life use of the premises in question.

The pleadings raised issuable facts on the question of whether or not the decedent, at the time of his death, was in possession of the premises, and whether or not the plaintiffs are entitled to immediate possession, and also as to whether or not the defendant unlawfully took possession of the premises, and as to the value and use of the premises in question.

The validity of the marriage agreement should not be determined as a matter of law on a motion for judgment on the pleadings, since it is necessary for a proper interpretation of that agreement and determination of its validity to know the peculiar circumstances attending its execution.

The contention by the plaintiffs that the agreement is invalid because it purports to permit the title of property in this State to be determined by a foreign law, cannot be sustained, for the parties had the right to enter into an agreement which should depend for its interpretation on foreign laws, and furthermore, the laws of Moses and Israel are not what are commonly known as foreign laws.

The contract in question was not void under the Statute of Frauds on the ground that it was not signed personally by the parties thereto, for it distinctly appears that it was signed by the agents of the parties, the rabbis selected by the parties to perform the Jewish orthodox marriage ceremony, and that the rabbis signed the agreement as agents of the parties in conformity with the laws of Israel and Moses. Furthermore, the contract was fully performed by the parties and the Statute of Frauds does not apply.

APPEAL by the plaintiffs, David E. Hurwitz and others, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 12th day of January, 1926, denying plaintiffs' motion for judgment on the pleadings, consisting of the complaint, the amended answer, and the defendant's bill of particulars.

*I. Maurice Wormser* [*Isaac Cohen* and *Peter J. Baxter* with him on the brief], for the appellants.

*Maxwell Slade* [*David H. Slade* with him on the brief], for the respondent.

MANNING, J. The action is one in ejectment, brought to recover possession of a small one-family house located at Mount Vernon, N. Y., which is occupied by the defendant Rebecca Hurwitz, the stepmother of the plaintiffs, the widow of their father. She bases her right to occupy the premises upon a certain ante-nuptial agreement made between her husband and herself, the agreement referred to being what is known in Hebrew as a "Koshuba."

The present motion of the plaintiffs is the third of its kind which has come before the courts. The first motion was made in September, 1924, upon the complaint and answer. That motion was denied. Thereafter, pursuant to an order of the court, the defendant filed a bill of particulars of her claim and therein set forth the Jewish "Koshuba," which is the marriage contract or marriage settlement referred to in the amended answer; and also made reference to the Jewish laws of Israel and Moses, which, together with the "Koshuba," were set forth in the Hebrew language. The plaintiffs then made their second motion for judgment on the pleadings, including the bill of particulars, and this motion was granted April 8, 1925. The defendant appealed to this court from

that order and after argument the following disposition was made of the appeal: " Order granting plaintiffs' motion for judgment on the pleadings affirmed, without costs, with leave to defendant to plead, within ten days, the agreement in the English language, either in an amended answer or in an amended bill of particulars, upon payment of ten dollars costs to plaintiffs. The copy of the agreement alleged in the answer was set out in a foreign language. Our practice requires that all pleadings and like papers shall be in the English language. (Rules of Civil Practice, rule 10.) The copy of the contract set out in the record in the original Hebrew cannot be considered by this court, nor can the copy set out in the respondents' brief be taken as the correct translation. The appeal, therefore, cannot be intelligently disposed of on the record before us." (*Hurwitz* v. *Hurwitz,* 214 App. Div. 823.)

An amended answer was thereafter filed, to which was attached and made part thereof a sworn translation of the " Koshuba " or Jewish marriage contract or settlement, upon which the defendant bases her right to occupy the property in question. After the filing of this amended answer the plaintiffs moved for a new bill of particulars and the motion was granted and such bill was filed. Thereupon the plaintiffs made their third motion for judgment on the pleadings, at the Special Term, Westchester county, with the result that the court denied the motion, writing a memorandum in which it was stated that the court was of the opinion that the issues raised by the defendant's answer should be determined after a trial and not disposed of upon a motion of this character. It is from this last-mentioned order that the present appeal is taken.

The contention of the appellants is that, although the answer contains what are claimed to be denials of material facts, there is only a question of law presented, and that question is as to the validity of the marriage agreement or " Koshuba; " that if this agreement be insufficient in law and does not constitute a defense to the action, the motion for judgment on the pleadings should have been granted.

The respondent contends, however, that certain issuable facts are presented by her pleadings, viz.:

1. That the decedent at the time of his death was in possession of the premises described in the complaint.

2. Plaintiffs' allegation in paragraph " third " of the complaint, that they are entitled to the immediate possession of the premises.

3. The allegations in paragraph " fifth " of the complaint " that on or about the 10th day of September, 1923, the defendant unlawfully took possession of said premises and has since unlawfully withheld from the plaintiffs the possession thereof."

4. The allegations in paragraph "sixth" of the complaint as to the value of the use and occupation of the premises in question, and the damages claimed to have been suffered by plaintiffs because of the withholding of the alleged possession.

In addition to these denials there is the defense regarding the "Koshuba" or contract of marriage which the defendant especially relies upon and which the plaintiffs assert is of no validity whatsoever.

I am inclined to the view that material issues are raised which justified the Special Term in denying the motion for judgment on the pleadings. It is, of course, a well-known rule that, on motions of this character, not only must all the facts and allegations as pleaded in the defense and bill of particulars be considered admitted and taken as true when attacked for insufficiency, but that every legitimate inference to be drawn therefrom must be resolved in favor of the pleading. (See *Clark* v. *Levy*, 130 App. Div. 389; *Emanuel* v. *Walter*, 138 id. 818; *Maxherman Co.* v. *Alper*, 210 id. 389. And to the same effect see *Moore* v. *Bonbright & Co.*, 202 App. Div. 281.)

The real question in this case, as I see it, is: Shall the validity of the so-called marriage agreement be disposed of upon a motion for judgment on the pleadings? I think not. It is true that the learned counsel for the appellants claims that the so-called "Koshuba" or marriage contract is illegal and of no effect, but it seems to me that this agreement, being written in the Hebrew language, with the peculiar idioms and characteristics of that language, cannot be properly interpreted without a trial at which the circumstances surrounding its execution and the situation of the parties may be ascertained.

If we lay aside the constant reference in the answer to the laws of Moses and Israel and other religious rules and regulations which, of course, are not enforcible *per se*, the question presented by the pleadings is whether the deceased husband and his wife made a valid agreement in writing, by which the defendant widow is entitled to possession of the premises during her widowhood. Such an agreement is not illegal in any way and does not depend upon the Jewish laws and regulations set out in the answer. If the parties in a written agreement duly bound themselves to conform to the provisions of these Jewish laws and the husband granted to the defendant wife rights or privileges defined in these laws, I think the wife may assert them so far as they are not contrary to our own law.

The appellants contend that the so-called "Koshuba" or marriage agreement is illegal and void for the following reasons:

1. A nuptial contract which does not by its terms fix the property

rights of the parties to it, but leaves them to be determined by a foreign and ecclesiastical law, cannot be enforced in this State.

2. A bare provision in a marriage contract that a foreign law shall govern the rights of the parties thereunder is invalid.

3. Express nuptial contracts, definite in terms and containing a complete description of the property to be affected, may only be construed and enforced according to a foreign law, (a) in so far as they relate to personal property, and (b) where the parties at the time of the execution of the contract intend to establish their domicile in the foreign country or place.

In support of this contention the learned counsel for the appellants in his very learned and instructive brief cites several authorities and some text books, beginning with an excerpt from Story on Conflict of Laws (8th ed. § 143), and cases in our own and adjoining States of the Union. It would serve no useful purpose, in my judgment, to analyze these various authorities. An examination of them discloses a situation where the courts were dealing with the question of the rights of parties under what is known as " foreign law." I do not understand that the so-called laws of Moses and Israel are what are known and accepted as " foreign laws." The " foreign laws " recognized by us are those of a foreign State or Nation. That calls for " a people permanently occupying a fixed territory, bound together by common laws, habits, and customs [or by a constitution], into one body politic, exercising, through the medium of an organized government, independent sovereignty and control over all persons and things within its boundaries, capable of making war and peace, and of entering into international relations with other communities." (*Roche* v. *Washington*, 19 Ind. 53, 56, citing Wheaton's Law of Nations, 53, 54, and 1 Kent's Comm. 188, 189.)

All that we have before us in the present case is a simple agreement, made between a man and a woman in contemplation of marriage, and the sole questions are, what was the agreement and whether the agreement is legal. If it is, then it should be enforced according to the intent of the parties who united in making it. If it is not legal, then the courts should so declare. But I do not see how any court can render intelligent judgment in the premises until there has been a proper judicial investigation by a trial of the issues raised in the pleadings. The contract in question, in my judgment, is not to be determined by the provisions of the laws of any foreign State. The agreement was made and executed in the State of New York, by persons who at the time resided there; the property affected by the litigation is located in the State of New York and all the parties to the controversy now live within

the State and are amenable to its laws. Contracts such as the one under discussion, which are intended to regulate and control interests which either of the parties to a marriage shall have in the property of the other during life, or even after the other's death, are favored by our courts and will be enforced according to the intention of the parties, even though their rights to such property are agreed to be governed by foreign laws. This principle is announced in *Johnston* v. *Spicer* (107 N. Y. 185); *Matter of Young* v. *Hicks* (92 id. 235); *Pierce* v. *Pierce* (71 id. 154, 157), and also in the case of *De Cicco* v. *Schweizer* (221 id. 431, 439). In the latter case the Court of Appeals stated: " The conclusion to which we are thus led is reinforced by those considerations of public policy which cluster about contracts that touch the marriage relation. The law favors marriage settlements, and seeks to uphold them. It puts them for many purposes in a class by themselves. (*Phalen* v. *U. S. Trust Co.*, 186 N. Y. 178, 181.) It has enforced them at times where consideration, if present at all, has been dependent upon doubtful inference. (*McNutt* v. *McNutt,* 116 Ind. 545; *Appleby* v. *Appleby,* 100 Minn. 408.) It strains, if need be, to the uttermost the interpretation of equivocal words and conduct in the effort to hold men to the honorable fulfilment of engagements designed to influence in their deepest relations the lives of others."

The Domestic Relations Law of the State of New York also provides that a contract made between persons in contemplation of marriage, remains in full force after the marriage takes place. (See Dom. Rel. Law, § 53.) In *Matter of Majot* (199 N. Y. 29, 32) it is said: " Ordinarily, the law of the place of the domicile of the owner controls with reference to the distribution of his personal property upon his decease, and the law of the place in which his real estate is situate controls with reference to its descent; and, in the absence of an express ante-nuptial contract otherwise providing, the foregoing rule prevails with reference to the disposition of property of married people upon the death of either."

In the case of *Colby* v. *Colby* (81 Hun, 221) the court, referring to a marriage settlement agreement made between husband and wife, which the record shows the husband violated by the terms of a will made subsequent to the date of the agreement, said: " There was a legal binding contract alleged in the complaint, made upon a good and sufficient consideration, which the plaintiff fully and faithfully performed upon her part; the deceased failed to perform on his part; he failed to vest her with the title to the property in question, and in consequence of such failure on the part of the deceased, the title to the house and lot descended to the

defendants who are his heirs at law; the relief to which the plaintiff is entitled is a conveyance from these heirs of the title to the premises in fulfilment of the contract of their ancestor."

A supplemental point made by the appellants is that the agreement in question is not enforcible because it was not actually signed by the parties themselves. I do not regard this point as serious because contracts of this character, whether involving interests in real or personal property, signed by a duly authorized agent in his own name, in the presence of the parties and by their direction, are sufficient to satisfy the Statute of Frauds. The contract under discussion is signed by the two rabbis selected by the parties to perform the Jewish orthodox marriage ceremony and draw and execute, pursuant to the laws of Israel and Moses, this orthodox marriage settlement for both parties. Whatever these rabbis did was done in the presence of both parties, by their direction and as their duly authorized agents. I do not think that the Statute of Frauds has any application to the contract under examination. It appears without dispute that the contract itself was duly performed and carried out according to its terms and became an accomplished fact; hence the Statute of Frauds has no application.

The order of the Special Term denying the motion for judgment on the pleadings was correctly made, and should be affirmed, with ten dollars costs and disbursements.

KELLY, P. J., JAYCOX, KAPPER and LAZANSKY, JJ., concur.

Order denying motion for judgment on the pleadings affirmed, with ten dollars costs and disbursements.