Salkind et al., Appellants, *v.* Pennsylvania
Threshermen & Farmers' Mutual Casualty
Insurance Company.

Argued April 19, 1939. Before SCHAFFER, MAXEY,
DREW, LINN, STERN and BARNES, JJ.

*Nochem S. Winnet,* for appellants.

*Henry Thomas Dolan,* with him *Robert C. Duffy,* for appellee.

OPINION BY MR. JUSTICE STERN, May 16, 1939:

This is an action by the insured employer to recover on a workmen's compensation policy. A verdict was rendered in favor of defendant. Plaintiffs asked for a new trial, alleging errors in the charge of the trial judge, and also for judgment n. o. v. The court in banc sustained the verdict. Plaintiffs appeal. We do not think there is any substantial merit in the objections to the charge of the court but deem it unnecessary to discuss them in detail because, in our opinion, defendant was entitled to a directed verdict in its favor.

The coverage of the policy, which was numbered 30909, is stated therein as follows: "The Insuring Company hereby assumes the whole liability of the Insured Employer under the Workmen's Compensation Act of Pennsylvania, to wit: Act No. 338, Laws of 1915, and Act No. 277, Laws of 1919, and all Laws amendatory thereof which may be or become effective while this Policy is in force, without any exceptions, qualifications or limitations, except as expressly provided." By the Act

of April 29, 1929, P. L. 853, the scope of the Workmen's Compensation Act of 1915, which had theretofore been limited to accidents occurring within the Commonwealth, was extended to "accidents occurring to Pennsylvania employes whose duties require them to go temporarily beyond the territorial limits of the Commonwealth, not over ninety days, when such employes are performing services for employers whose place of business is within the Commonwealth." What the policy insured against, therefore, was compensation liability under the Pennsylvania law for accidents in Pennsylvania and those occurring elsewhere to Pennsylvania employes temporarily working outside the state.[1]

Plaintiffs, who are painting contractors, entered into an agreement to paint two bridges which American Bridge Company was erecting at Cape Cod, Mass. American Bridge Company wrote to them asking them "to submit evidence of your coverage for Workmen's Compensation, Public Liability and Property Damage insurance." Plaintiffs referred this request to defendant, which sent to American Bridge Company a so-called "Certificate of Insurance" certifying that Policy No. 30909 for compensation insurance had been issued to plaintiffs, and stating that "this certificate is issued with the understanding that it is a copy of the original policy, and is subject to all of the provisions of the original policy . . . ." American Bridge Company wrote to defendant acknowledging receipt of the cer-

---

[1] The policy contained an endorsement extending its provisions to include incidental operations of the assured in the States of New York and New Jersey where the work did not exceed a period of ninety consecutive days and where it was "done by Pennsylvania employes and all accidents and claims settled for in accordance with Pennsylvania laws and no others." In view of the amendment of 1929 above quoted, it is questionable whether this endorsement was necessary, since by that amendment the coverage of the policy became automatically extended not only to those two states but to all others as well, subject to the limitations expressed in the act.

tificate and adding: "[We] would . . . like [you] to confirm advice of your local representative . . . that the classification shown in body of this certificate . . . covers the assured while engaged in the painting of structural steel in the field." To this defendant replied: "In regard to the last paragraph of your letter, please be informed that our policy will protect the assured while engaged in the painting of structural steel in the field, along with the operations as listed on the certificate."

Shortly after plaintiffs started their work on the Cape Cod bridges, they hired at Philadelphia one Mike Sikoutris and instructed him to go to Cape Cod and tell the foreman there to put him to work. The evidence in regard to this workman was that he was a migratory painter of structural steel. He had worked for plaintiffs on one occasion several years before, but "whether it was in New York, Pennsylvania or some other place," plaintiffs did not know; there was evidence that a year before he had been working in Pittsburgh and several years prior to that in New York. His home was said to be "around Pittsburgh—around the steel plants there," but there was little, if any, testimony to indicate where the greater part of his working time was spent. It has been held that the term "Pennsylvania employes" as used in the Act of April 29, 1929, P. L. 853, refers only to employes who perform the major portion of their services within the Commonwealth, and not to every employe who is working for a Pennsylvania employer: *Book v. D. B. Frampton & Co.*, 105 Pa. Superior Ct. 380; *Lutz v. State Workmen's Insurance Fund*, 124 Pa. Superior Ct. 149. Upon the evidence presented the learned trial judge properly left it to the jury to say whether Sikoutris was "a Pennsylvania employe, a man who devoted most of his time and attention to work within the State of Pennsylvania," and the jury by its verdict evidently concluded that he was not a Pennsylvania employe.

Sikoutris, on October 9, 1934, was severely injured by an accident while at work on the Cape Cod operation. He was paid by Liberty Mutual Insurance Company, the insurance carrier of American Bridge Company, as workmen's compensation under the laws of Massachusetts, the sum of $5,559.50, which was admittedly less than the amount which would have been due him under the Pennsylvania law if the accident had occurred in this Commonwealth. American Bridge Company deducted $4,574 of this amount from its remittance to plaintiffs for the money due them on their contract and charged their account with the balance of $985.50. It was for this sum of $5,559.50, with interest, that plaintiffs sought a verdict in the present action.

In order to recover, it was necessary for plaintiffs to prove either that they were liable to Sikoutris for compensation under the Workmen's Compensation Act of Pennsylvania, or that, if there was no such liability, the accident nevertheless came within the coverage of the policy. In our opinion plaintiffs failed to meet either of these conditions.

The workmen's compensation laws of Pennsylvania, as has already been stated, impose liability for compensation only where an accident occurs within the Commonwealth, or to "a Pennsylvania employe" who is temporarily at work in another state. In the present case the accident did not happen in Pennsylvania, and the verdict of the jury establishes that Sikoutris was not a "Pennsylvania employe." But even if he were, the duty would have been upon American Bridge Company, not plaintiffs, to pay him compensation, unless there was an agreement between American Bridge Company and plaintiffs whereby the latter assumed such responsibility. Article III, section 302 (b) of the Workmen's Compensation Act of 1915, provides that where an employer permits the entry, upon premises occupied by him or under his control, of a laborer or an assistant hired by an employe or contractor, for the performance

upon such premises of a part of the employer's regular business entrusted to that employe or contractor, the general or principal contractor, or, as he has been called, the "statutory employer," becomes liable to such laborer for the compensation provided by the act, and, in such case, "where article three binds such employer and such laborer or assistant, it shall not be in effect between the intermediate employer or contractor and such laborer or assistant, unless otherwise expressedly agreed." It has been held that "when the subcontractor and the statutory employer agree that the subcontractor shall carry compensation insurance for his own employees it is in effect an agreement that the subcontractor will pay his employees the compensation due under the provisions of article III": *Byrne v. Hitner's Sons Co.*, 290 Pa. 225, 233; *Swartz v. Conradis*, 298 Pa. 343, 346, 347; *Robinson v. Atlantic Elevator Co.*, 298 Pa. 549, 551. But, while it was said in the Byrne case (p. 235) that "the evidence necessary to show an express agreement need be very slight where both the principal contractor and the subcontractor carry insurance," in the present case there was no proof of any such agreement, and plaintiffs therefore did not establish that they were liable to Sikoutris for compensation under the Pennsylvania law, even if he was a Pennsylvania employe.

The question then arises, did the policy cover this accident even though plaintiffs were not liable to pay compensation to Sikoutris under the Workmen's Compensation Act of Pennsylvania? Plaintiffs contend that because defendant wrote to American Bridge Company that the policy would "protect the assured while engaged in the painting of structural steel in the field," [2] this contractually extended the coverage to compensation for Sikoutris in Massachusetts, regardless of the

---

[2] Plaintiffs argue that "in the field" meant anywhere in the country, defendant that it meant away from the fabricating shop but only within the geographic limits covered by the Pennsylvania Workmen's Compensation Act.

Pennsylvania law. But a contractual extension of the policy (which constituted the contract between plaintiffs and defendant) could not legally result from correspondence between defendant and American Bridge Company, the latter not being a party to the contract, nor an agent or representative of plaintiffs, but an independent contractor. Nor did its letter to American Bridge Company estop defendant from defending the present action on the ground that the policy did not cover the accident to Sikoutris. If an estoppel arose it could be in favor only of American Bridge Company to which the letter was written; that company, however, is not, and could not be, a party to this suit, nor has it suffered any damage. As far as the record discloses, plaintiff never knew or heard of this letter, and therefore did not act or forbear to act in reliance thereon; on the contrary, one of the plaintiffs testified at the trial that he understood the policy did not cover any work in Massachusetts except in the case of employes "I brought . . . up from Pennsylvania," showing that he realized that the policy was governed and limited by the scope of the Pennsylvania Workmen's Compensation Act.

One of the terms of the policy was that upon the occurrence of an accident the insured employer should give immediate notice and complete information to defendant. Plaintiffs did not prove that any notice was given. Defendant in its affidavit of defense denied that it received notice of the accident until three or four months after it happened. In view of what has been said in regard to the more fundamental questions involved, it is not necessary to discuss this feature of the case.

Judgment affirmed.